THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ROBERT C. BOLUS

    Plaintiff,

v.

NATIONWIDE PROPERTY
AND CASUALTY COMPANY
and NATIONWIDE MUTUAL
INSURANCE COMPANY

    Defendants.

3:16-CV-00753
(JUDGE MARIANI)

## MEMORANDUM OPINION

### I. INTRODUCTION

Pending before the Court is a second motion to dismiss brought by Defendants. Doc. 42. On May 11, 2016, Defendants filed a motion to dismiss Plaintiff's original Complaint. Doc. 8. On February 17, 2017, Magistrate Judge Carlson issued a Report and Recommendation recommending dismissing the breach of contract, intentional infliction of emotional dismiss, and fraud claims with prejudice as time-barred, and dismissing the Unfair Trade Practices and Consumer Protection Law ("UTPCPL") claim without prejudice for failing to state a cause of action. Doc. 34. On March 20, 2017, this Court adopted Magistrate Judge Carlson's Report and Recommendation. Doc. 36. Plaintiff subsequently filed an Amended Complaint alleging a single UTPCPL claim. Doc. 41. Defendants moved again to dismiss the Amended Complaint. Doc. 42. For the reasons that follow, Defendant's motion will be granted.

1

## II. FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY

On April 5, 2016, Plaintiff Robert Bolus initiated the action against Defendants Nationwide Property and Casualty Company and Nationwide Mutual Insurance Company ("Nationwide") in the Court of Common Pleas of Lackawanna County, almost five years after the insurance policy between them was cancelled. Doc. 2. Nationwide removed the action to this Court on May 4, 2016. Doc. 1.

The underlying factual events of this case take place in 2011, when Bolus discovered that his personal vehicle, a 2007 Volvo XC 90, sustained damage from ice forming on the Volvo's floor. Doc. 41 ¶¶ 7, 10. "At its then location, the Volvo was examined by a claims adjuster" of Nationwide. *Id.* ¶ 11. A claim number was assigned to Bolus for the claim. *Id.* ¶ 12. Bolus then instructed one of his employees to tow the Volvo to the Santo Lincoln Mercury Volvo dealership in Moosic, Pennsylvania. *Id.* ¶ 13. It is unclear from the Amended Complaint why Bolus wished to tow the Volvo to the dealership, but it is implied that it was towed there so that Nationwide may examine and/or repair the Volvo at that location. However, the employee erroneously had the Volvo towed to Bolus' business, not the dealership. *Id.* ¶ 14. Believing that the Volvo was towed to the dealership as he instructed, Bolus submitted an invoice for the cost of towing to Nationwide (the "inaccurate claim submission"). *Id.* ¶¶ 16, 17. After learning of the mistake, Bolus requested the invoice to be deleted and explained to Nationwide "the nature of how the error occurred." *Id.* ¶¶ 18, 22. Bolus also alleges that "[i]t is believed and therefore averred

2

that the Defendants, Nationwide knew that the Volvo was later towed to [the dealership] and given an estimate for repairs [by the dealership]." *Id.* ¶ 21. However, the Amended Complaint does not provide any allegations providing a basis for this belief, nor does it explain who eventually towed the Volvo to the dealership, or when this occurred. Reading between the lines of the Amended Complaint, it may be hypothesized that Bolus towed the Volvo to the dealership after discovering his employee's mistake, but it is unclear how Nationwide could have learned that "the Volvo was later towed to [the dealership]." *Id.*

Bolus alleges that "[w]ithout a proper investigation," Nationwide determined that his inaccurate claim submission was fraudulent, because the Volvo was not at the dealership at the time Bolus submitted his claim for towing costs; Nationwide then denied the claim and cancelled Bolus' policy. *Id.* ¶¶ 23-25. Prior to its cancellation, Bolus maintained the policy with Nationwide for five years. *Id.* ¶ 31. Pursuant to its determination of a fraudulent claim, Nationwide referred the claim to the Pennsylvania Office of Attorney General and the Pennsylvania Insurance Commission. *Id.* ¶ 27. Bolus alleges that the Pennsylvania Office of Attorney General ultimately withdrew criminal charges against him. It is also alleged that the Pennsylvania Insurance Commission dismissed Nationwide's action against Bolus, and ruled that Nationwide erred in cancelling his insurance policy. *Id.* ¶¶ 28, 29. In short, the crux of Bolus' claim is that Nationwide did not properly investigate his inaccurate claim submission, despite his efforts to clear up the error and request that the claim be deleted.

And instead, Nationwide determined the inaccurate claim submission was not an innocuous error, but a fraudulent claim, and cancelled Bolus' policy as a consequence.

The Amended Complaint alleges that these actions by Nationwide constitute a UTPCPL claim, because Nationwide's "representatives and marketing materials and promotions...actively deceived [Bolus] into thinking that...Nationwide would pay claims its customers submitted against the policies it sold, and stand behind their customers." *Id.* ¶ 33. Specifically, Bolus alleges that he relied on Nationwide's advertisements with the slogans "such as, but not limited to 'Nationwide is on your side,'" to his detriment. *Id.* ¶ 32. Bolus claims he "justifiably relied on the statements by and marketing materials" of Nationwide, and that his justifiable reliance caused him to suffer an "ascertainable loss" because he was "compelled to pay for costs associated with repairing and restoring the Volvo," which should have been covered by Nationwide. *Id.* ¶¶ 34-36.

In its motion to dismiss, Nationwide argues that the Amended Complaint fails to plead the requisite elements of a UTPCPL claim, including deceptive conduct or justifiable reliance, and in the alternative, that the claim is barred by the economic loss doctrine. Doc. 42.

### III. STANDARD OF REVIEW

A complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim

4

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations, alterations, and quotations marks omitted). A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v. Abbott Labs.*, 707 F.3d 223, 231 n.14 (3d Cir. 2013) (internal citation, alteration, and quotation marks omitted). Thus, "the presumption of truth attaches only to those allegations for which there is sufficient 'factual matter' to render them 'plausible on [their] face.'" *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (alteration in original) (quoting *Iqbal*, 556 U.S. at 679). "Conclusory assertions of fact and legal conclusions are not entitled to the same presumption." *Id.*

"Although the plausibility standard 'does not impose a probability requirement,' it does require a pleading to show 'more than a sheer possibility that a defendant has acted unlawfully.'" *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal

5

citation omitted) (first quoting *Twombly*, 550 U.S. at 556; then quoting *Iqbal*, 556 U.S. at 678). "The plausibility determination is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* at 786-87 (quoting *Iqbal*, 556 U.S. 679).

## IV. ANALYSIS

The Amended Complaint alleges that Nationwide violated UTPCPL's catch-all provision, 73 P.S. § 201-2(4)(xxi). Doc. 41 ¶ 37. The provision prohibits "any other fraudulent or deceptive conduct which creates likelihood of confusion or of misunderstanding." 73 P.S. § 201-2(4)(xxi). In order to plead a UTPCPL claim under the catch-all provision, the plaintiff "must at least allege facts from which plausible inferences of deceptive conduct and justifiable reliance thereon can be drawn." *Kemezis v. Matthews*, 394 F. App'x 956, 959 (3d Cir. 2010) (affirming dismissal of UTPCPL claim because neither element were sufficiently pled) (citing *Hunt v. U.S. Tobacco Co.*, 538 F.3d 217, 224 (3d Cir. 2008)). While "neither the Supreme Court of Pennsylvania nor the Third Circuit has directly held that the catchall provision requires pleading common law fraud...the courts are settled that the catchall provision demands that a plaintiff must plead and prove 'justifiable reliance' in addition to showing a deceptive act." *Golphin v. Wells Fargo Bank*, 2010 WL 4536766, at *7 (M.D. Pa. Nov. 2, 2010) (citing *Kemezis*, 394 F. App'x at 959).

The only misrepresentations Bolus allegedly relied upon are based on Nationwide's marketing and advertisement methods that induced him "into thinking that [Nationwide]

would pay claims its customers submitted against policies it sold, and stand behind their customers." Doc. 41 ¶ 33. Taking all allegations in the Amended Complaint to be true, the Amended Complaint has failed to establish that Bolus' loss flowed from justifiable reliance on Nationwide's advertisements and marketing representations.

First, the only misrepresentation that is alleged with specificity in the Amended Complaint is that Nationwide ran "advertisements with slogans such as[,] but not limited to[,] 'Nationwide is on your side.'" *Id.* ¶ 32. Such slogans can be most naturally characterized as non-actionable puffery. "Puffery is distinguishable from actionable 'misdescriptions or false representations of specific characteristics of a product' that are subject to measurement and are therefore testable." *Landau v. Viridian Energy PA LLC*, 223 F. Supp. 3d 401, 416 (E.D. Pa. 2016) (quoting *Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939, 945 (3d Cir. 1993). A vague promise to potential customers to be "on your side" is neither a measurable assertion nor a testable one. *See, e.g., Gidley v. Allstate Ins. Co.*, 2009 WL 4893567, at *4 (E.D. Pa. Dec. 17, 2009) (rejecting plaintiff's purported reliance on Allstate's slogan: "You are in good hands with Allstate," and noting that "[t]his phrase has been determined by numerous courts to constitute mere puffery") (collecting other cases); *Landau*, 223 F. Supp. 3d at 416-17 (finding that online advertisements, which touted Defendant's product as "responsible" or "green" energy that is also "affordable" or will not "hurt your pocketbook," were "vague descriptions of its product [which] were mere puffery and therefore cannot support a claim under the UTPCPL," but finding that "[c]laims that

7

[Defendant's] rates would remain stable and be lower than [competitor's] rates were not generalized claims," which may support a UTPCPL claim).

Second, even assuming that the misrepresentations were not mere puffery, Bolus' alleged reliance on it only provides, at best, a tenuous connection to the resulting harm. Bolus' reliance on Nationwide's marketing materials may have contributed to his decision to buy an insurance policy from Nationwide, but that is where the causal connection ends. There is no factual allegation in the Amended Complaint that suggests that the solicitation or sale of the policy had to do with Nationwide's allegedly fraudulent investigation into Bolus' claim submission. Indeed, according to the Amended Complaint itself, the inaccurate claim submission occurred approximately five years after Bolus purchased the policy. *Id.* ¶ 31 (alleging that prior to Nationwide's determination of the claim submission as fraudulent and cancellation of the policy, Bolus maintained the policy with Nationwide for five years).

As the Third Circuit instructed, the UTPCPL's causation requirement "demand[s] a showing of *justifiable* reliance, not simply a causal connection between the misrepresentation and the harm." *Hunt*, 538 F.3d at 222 (emphasis added). "A mere causal connection can be established by, for instance, proof that a misrepresentation inflated a product's price, thereby injuring every purchaser because he paid more than he would have paid in the absence of the misrepresentation." *Id.* at 222 n. 4 (citing *Weinberg v. Sun Co.*, 777 A.2d 442, 445 (Pa. 2001)). "A justifiable-reliance requirement, by contrast, requires the plaintiff to go further—he must show that he justifiably bought the product in the

8

first place (or engaged in some other detrimental activity) because of the misrepresentation." *Id.*

Applying this more stringent pleading standard for causation, Bolus has failed to allege justifiable reliance. Bolus has not alleged any detrimental activity other than that "[a]t the time, [he] purchased the insurance contract from [Nationwide], Nationwide ran advertisements with slogans such as but not limited to 'Nationwide is on your side.'" Doc. 41 ¶ 32. In other words, the only detrimental activity alleged is that he purchased the policy from Nationwide due to his reliance upon Nationwide's marketing slogans and advertisements. But Bolus' decision to purchase the policy did not directly cause him to pay for repair costs for his Volvo at his personal expense; rather, his loss arose from Nationwide's alleged fraudulent investigation of his claim submission, which caused the denial of his claim. Notably absent in the Amended Complaint are any references to the terms and conditions of the policy, which may have reflected Nationwide's procedures in investigating customer claim submissions, which, in turn, could have shed some light on whether Nationwide violated its policy terms in its investigation.

Because it is not alleged that Bolus was induced into taking action (or inaction), by relying on any misrepresentations made by Nationwide during its investigation into the claim submission, and because there is no alleged reliance on any misrepresentations made in the terms of the insurance policy, the Amended Complaint has failed to plead the requisite causal connection for an UTPCPL claim. *See, e.g., Seldon v. Home Loan Servs., Inc.*, 647

F. Supp. 2d 451, 470–71 (E.D. Pa. 2009) (finding that "[t]o the extent [plaintiffs'] UTPCPL catchall claim of deceptive conduct relies on alleged misrepresentations of the loan terms or the identity of defendants, the claim must fail" because plaintiffs "[did] not even describe the actual terms, conditions, or characteristics of the loan [policy] and in what respect defendants misrepresented these aspects of the loan"); *Doherty v. Allstate Indem. Co.*, 2016 WL 5390638, at *6 (E.D. Pa. Sept. 27, 2016) ("Although Plaintiffs claim that Allstate 'published and issued written documentation as part of its [marketing] presentation,' they have neither attached such documentation to their amended complaint nor explained what Allstate said or specifically how the company misrepresented policy terms."); *Phillips v. State Farm Mut. Auto. Ins. Co.*, 2015 WL 3454537, at *3 (M.D. Pa. May 29, 2015) ("Even assuming that Defendant did not properly investigate Plaintiff's claim, Plaintiff has alleged no facts to the effect that this allegedly improper conduct was intentionally done to give a false impression (or what that false impression would be).").

In any event, Bolus' claim separately fails because it is be barred by the economic loss doctrine. In his original Complaint, Bolus attempted to plead a breach of contract claim, which was dismissed as time-barred. Doc. 36. His current claim, brought under the catch-all provision of the UTPCPL, rests on allegations that largely sound in contract. The alleged loss in the Amended Complaint (repair costs for the Volvo) resulted from Nationwide's inadequate investigation of Bolus' claim submission—but Nationwide presumably only had a duty to investigate and pay for his claim submission pursuant to the policy contract Bolus

10

maintained with Nationwide.

In Pennsylvania, "[t]he economic loss doctrine 'prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract.'" *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 671 (3d Cir. 2002) (citing *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 618 (3d Cir.1995)). "The purpose of the doctrine is to 'prevent[ ] tort law from reallocating risks between parties who fairly have negotiated an arms-length contract.'" *Sunshine v. Reassure Am. Life Ins. Co.*, 515 F. App'x 140, 144–45 (3d Cir. 2013) (quoting *Werwinski*, 286 F.3d at 679). In *Werwinski*, the Third Circuit found that plaintiffs should not be provided with "additional tort remedies" and applied the economic loss doctrine to bar the UTPCPL claim and the common law intentional fraud claim alleged in the case. *Werwinski*, 286 F.3d at 680–81. Similarly, in *Sunshine*, the Third Circuit applied the economic loss doctrine because plaintiff's "alleged loss is economic; [and] he claims that Reassure has failed to provide the coverage promised by the terms of the policy." *Sunshine*, 515 F. App'x at 145 (3d Cir. 2013). The plaintiff in *Sunshine* "also claim[ed] a wrong extraneous to that policy: that Reassure 'advertis[ed] the Policy with intent not to provide the full coverage detailed therein.'" *Id.* However, the Third Circuit declined to credit that allegation because "his complaint allege[ed] no specific instance of false or misleading advertising with respect to the policy he purchased. As the District Court pointed out, Sunshine cannot now 'convert his claim to a tort claim by alleging that Reassure's failure to pay disability benefits to Sunshine means Reassure made

11

misrepresentations and false advertisements when selling him the disability insurance.'" *Id.* (internal quotation marks omitted).

"[A] UTPCPL claim is barred where allegedly deceptive conduct is clearly 'interwoven' with an insurance contract and a plaintiff seeks damages that flow from the contract." *Ridolfi v. State Farm Mut. Auto. Ins. Co.*, 146 F. Supp. 3d 619, 626 (M.D. Pa. 2015) (citing *McGuckin v. Allstate Fire & Cas. Ins. Co.*, 118 F. Supp. 3d 716, 721 (E.D. Pa. 2015)). Here, the allegedly deceptive conduct at issue is clearly "interwoven" with an insurance contract. Bolus alleges that he relied on misrepresentations in Nationwide's marketing statements and advertisements, which he found to be inconsistent with the way Nationwide investigated his claim submission. But it is only the allegedly improper investigation that resulted in a denial of his inaccurate claim submission and the cancellation of his policy, causing him "to pay for costs associated with repairing and restoring the Volvo." Doc. 41 ¶ 36. Again, it is not Nationwide's representations to be fair and sympathetic to its customers that caused Bolus' loss, but its investigation that determined his claim submission to be fraudulent, despite his efforts to clear up his employee's error, which led him into having to repair his Volvo "at his own expense." *Id.* ¶ 26. This is precisely the type of case in which the economic loss doctrine must apply, because the alleged loss is caused by Nationwide's performance under the insurance contract to investigate and pay a customer claim submission. *See* Doc. 41 ¶¶ 11-12, 16, 23 (alleging that "[a]t all times relevant hereto...Bolus had a motor vehicle insurance policy with

[Nationwide]"; that Nationwide assigned a claim number after Bolus' reported that his Volvo was in need of repair; that Bolus erroneously "submitted an invoice for the cost of towing" his Volvo to the Santo Lincoln Mercury dealership when it was not towed there; that Bolus subsequently asked Nationwide to "delete the invoice from the claim," and that "[w]ithout a proper investigation...Nationwide and their agents declared that...Bolus' claim was fraudulent"). Furthermore, the alleged resulting loss is purely economic in nature. *Id.* ¶ 36. The UTPCPL claim therefore squarely falls within the type of cases barred by the economic loss doctrine.

In his response brief, Bolus argues that *Werwinski* is no longer good law because "in *Knight v. Springfield Hyundai*, 81 A.3d 940, 952 (Pa. Super. Ct. 2013), the Pennsylvania Superior Court held that UTPCPL claims are *not* subject to the economic loss doctrine because they are statutory claims that do not sound in negligence." Doc. 43 at 8 (emphasis in original). He attempts to bolster this argument by citing this Court's opinion in *Ridolfi*, which noted that federal courts "that have addressed the issue after *Knight* have split." *Id.* at 8 (citing *Ridolfi*, 146 F. Supp. 3d at 626). Bolus' interpretation of *Ridolfi* completely turns the Court's reasoning on its head. This Court in *Ridolfi* acknowledged the split in district courts, but "conclude[d] that it is bound by a Third Circuit prediction of how the Pennsylvania Supreme Court will rule on an issue, unless one of those two courts subsequently rules otherwise[, a]ccordingly, *Werwinski* governs this Court's decision here." *Ridolfi*, 146 F. Supp. 3d at 626. Since then, the Pennsylvania Supreme Court has yet to rule on the issue,

leaving *Werwinski* as good law.

While Bolus' brief cites certain district court opinions (from outside of this district) that have declined to follow the reasoning of *Werwinski*, see Doc. 43 at 9, this Court will not disregard the Third Circuit's ruling in favor of district court rulings from other districts. *See Pesotine v. Liberty Mut. Grp., Inc.*, 2014 WL 4215535, at *4 n. 1 (M.D. Pa. Aug. 25, 2014) (noting that while some district courts have recognized an inconsistency between *Werwinski* and Pennsylvania state law, "in the absence of a contrary decision by the Pennsylvania Supreme Court, we are bound by the Third Circuit's decision in *Werwinski*").

In fact, in as recently as August 2016, the Third Circuit reaffirmed *Werwinski*, finding that the district court properly "applied binding Third Circuit precedent on how to treat UTPCPL claims that essentially arise out of a breach of contract. In particular, this Court has predicted that the Pennsylvania Supreme Court would apply the economic loss doctrine to UTPCPL claims based on intentional torts like fraud." *Berkery v. Verizon Commc'ns Inc.*, 658 F. App'x 172, 175 (3d Cir. 2016) (citing *Werwinski*, 286 F.3d at 679).[1] *See also Pratts v. State Farm Fire & Cas. Co.*, 2017 WL 4151182, at *6 (M.D. Pa. Sept. 19, 2017) (noting that "[a]lthough the Pennsylvania Superior Court has [] held that UTPCPL claims are not subject to the economic loss doctrine" in *Knight v. Springfield Hyundai*, the court is "bound by the prediction in *Werwinski* unless the Third Circuit or the Pennsylvania Supreme Court

---

[1] The Court notes that *Berkery* was decided *after* the contrary district court case law cited in Plaintiff's brief. Thus, *Berkery*, a Third Circuit case, reaffirms *Werwinski's* reasoning and abrogates those previous district court rulings.

14

rules otherwise"); *Whitaker v. Herr Foods, Inc.*, 198 F. Supp. 3d 476, 490 (E.D. Pa. 2016) ("[T]he Third Circuit has not questioned the propriety of its decision in *Werwinski*, and this Court will not usurp the Circuit's authority and do so itself. Therefore, Plaintiff's UTPCPL claim will be dismissed pursuant to the economic loss doctrine because Plaintiff alleges only economic damages.").

Where, as here, the alleged fraudulent conduct that led to plaintiff's harm is interwoven with a party's performance under an insurance contract, and where, as here, the plaintiff has only alleged purely economic damages, the economic loss doctrine bars UTPCPL claims under *Werwinski*. Accordingly, the Court will dismiss Plaintiff's claim for violation of the UTPCPL with prejudice.

## V. Conclusion

For the reasons outlined above, Defendant's motion to dismiss the Amended Complaint (Doc. 42) will be granted. A separate Order shall issue.

/s/ Robert D. Mariani
Robert D. Mariani
United States District Judge